**CARDINAL CONSTRUCTION COMPANY, an Ohio corporation, Plaintiff,**

**v.**

**BESMEC, INC., a West Virginia corporation; Fidelity and Deposit Company of Maryland, a Maryland corporation; Electronic Specialty Company, a West Virginia corporation; and the United States of America, Defendants.**

Civ. A. No. 2:85–0791.

United States District Court,
S.D. West Virginia,
Charleston Division.

Aug. 25, 1988.

Charles L. Woody, R. Scott Long, Charleston, W. Va., for plaintiff.

Charles W. Yeager, Charleston, W. Va., for Fidelity.

Charles E. Pettrey, Jr., Charleston, W. Va., for Electronic.

Henry Friedman, Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the separate motions for summary judgment of Fidelity and Deposit Company of Maryland, Electronic Specialty Company, and the United States of America. The parties have stipulated and agreed to the pertinent facts and submit this case for decision on the basis of the record before the court inasmuch as there is no genuine issue of material fact in dispute.

### I. *Factual Background*

The plaintiff, Cardinal Construction Company, was engaged in constructing the Boone County Health Care Center. The defendant BesMec, Inc., contracted with Cardinal to perform electrical work. Inasmuch as BesMec was not compensated as required by the subcontract,[1] it instituted a civil action against Cardinal on or about June 21, 1983. Subsequently, on November 14, 1983, BesMec brought an action against United States Fidelity and Guaranty Company (USF & G), Cardinal's surety on the project.

In November, 1984, Cardinal and BesMec compromised and settled BesMec's pending civil actions against Cardinal and USF & G

---

1. The original contract price to be paid BesMec was $278,500.00 and the contract was to be substantially completed by October 30, 1982. *See* Stipulation, Exhibit A at 2. BesMec's complaint in the action filed against Cardinal alleges that Cardinal was to make a total payment to BesMec of $291,751.24. Apparently, the difference between the contract price and the price claimed arose due to authorized change orders. As of November 8, 1982, Cardinal had paid $264,807.00.

for the sum of $20,000.00, subject to a determination of the party or parties legally entitled to the settlement amount. Because several parties claim an interest in some or all of the settlement sum, Cardinal commenced this interpleader action requesting "that this Court determine which party(s) is entitled to the Twenty Thousand Dollar ($20,000.00) settlement sum due BesMec and deposited with this Court." Complaint at 5.

The defendant Fidelity and Deposit Company of Maryland was the surety on the bonds of BesMec which guaranteed payment to those who provided labor or materials for the electrical work done by BesMec. On September 11, 1980, BesMec agreed to indemnify Fidelity from any loss suffered by Fidelity under the terms of the surety bonds written for BesMec.[2] State Electric Supply Company, Inc., sold BesMec materials and supplies to be used by BesMec in performance of its contract with Cardinal. Fidelity, acting as surety, was required to pay State Electric the sum of $9,645.88 on or about September 26, 1983, for goods received. Contemporaneously, Fidelity was granted an assignment of the rights of State Electric. Accordingly, Fidelity argues that it is entitled to $9,645.88 of the $20,000.00 on deposit.

Meanwhile, on December 27, 1982, the defendant Electronic Specialty Company, Inc., recorded a notice of mechanics lien in the office of the Clerk of the County Commission of Boone County, West Virginia, in the amount of $5,048.62 for labor and materials supplied to BesMec in connection with the construction of the health care facility. The parties agree that the me-

chanics lien was timely filed and that Electronic Specialty began furnishing materials for the job prior to the recordation of the first federal tax lien on November 23, 1982, as noted below. Accordingly, the mechanics lien would take precedence over the federal tax lien under 26 U.S.C. § 6323(a) and (b)(2), inasmuch as suit to enforce the mechanics lien was filed by Electronic Specialty on June 7, 1983, being within the six-month period required by W.Va.Code § 38-2-34.

The suit by Electronic Specialty on its mechanics lien was filed in Boone County Circuit Court against four defendants, Boone County Building Commission, Americare of West Virginia, Inc., Cardinal and BesMec. The Boone County Building Commission, pursuant to an order agreed to by Electronic Specialty, has been dismissed from that action. Electronic Specialty also sought in that action an *in personam* judgment for the $5,048.62 against Cardinal and BesMec. Default judgment was entered in favor of Electronic Specialty against Cardinal in the amount of $5,048.62 on July 20, 1984. Default judgment was similarly entered against BesMec which has since sought relief under the federal bankruptcy laws. The action remains pending with respect to enforcement of the mechanics lien except as to the Boone County Building Commission which has been dismissed.

The United States has filed three notices of federal tax liens against BesMec in the Boone County Clerk's office. The initial notice, relating to a lien for four quarters ending June 30, 1982, in the amount of $48,284.91, was filed on November 23, 1982.[3] The second notice, reflecting a lien

---

2. The "Agreement of Indemnity" provided that Besmec's rights to payment on projects in which Fidelity was the surety would be assigned to Fidelity upon the breach of BesMec, effective as of the date of the bond. In the event that the underlying contract was unassignable, all payments received by BesMec were to be held in a

trust fund for the benefit of Fidelity. *See* Stipulation Exhibit N at 1–2.

3. Although the original tax lien against BesMec was filed on November 23, 1982, it was assessed at four different times as displayed by the table below:

| Kind of Tax | Tax Period Ended | Date of Assessment | Identifying Number | Unpaid Balance of Assessment |
|---|---|---|---|---|
| 941 | 09–30–81 | 11–30–81 | 55–0602374 | $ 5534.86 |
| 941 | 12–31–81 | 03–22–82 | 55–0602374 | 9256.99 |
| 941 | 03–31–82 | 06–14–82 | 55–0602374 | 16496.51 |

for the period ending September 30, 1982, in the amount of $6,277.10, was filed on February 11, 1983. The third and final notice was filed on October 31, 1983, indicating a lien for the period ending December 31, 1981, in the amount of $191.75. There are also subsequent judgment liens of record against BesMec, the earliest of which was obtained June 6, 1984, and recorded on June 14, 1984.

On August 9, 1985, the Circuit Court of Kanawha County, West Virginia, in an action entitled *State of West Virginia v. A & E Painters, Inc.*, Civil Action No. 85–C–271, ordered that the charter rights of Bes-Mec be forfeited and ordered that Vincent V. Chaney be appointed as receiver for BesMec for the purpose of liquidating the assets of BesMec and distributing those assets among BesMec's creditors and shareholders. BesMec's financial condition has not improved and BesMec is insolvent.

Fidelity maintains that it should be permitted to recover the amount of $9,645.88 which it paid to State Electric as BesMec's surety. Electronic Specialty claims the sum of $5,048.62 as set forth in its notice of mechanics lien and its suit to enforce its mechanics lien. The United States posits that it is entitled to the total deposit in the registry of the court in that it has perfected tax liens in the amount of $54,753.76. The United States claims priority under the federal tax lien statute, 26 U.S.C. § 6321, and the absolute priority rule of 31 U.S.C. § 3713. The defendant BesMec allies itself with the United States and prays that the $20,000.00 on deposit be used to pay past-due taxes.

## II. *Section 6321*

The Internal Revenue Code gives the United States a lien upon "all property and rights to property, whether real or personal, belonging to" any taxpayer who fails to

pay any tax after demand.[4] The tax lien arises at the time of assessment and is perfected by filing. 26 U.S.C. § 6323. A perfected tax lien takes priority over all other security interests except for those enumerated in § 6321.

■ State law controls as to whether the taxpayer has a property interest subject to the federal tax lien. *Commonwealth of Kentucky v. Laurel County*, 805 F.2d 628 (6th Cir.1986). Once a property interest is found, federal law determines the priority of the federal tax lien. *United States v. Durham Lumber Co.*, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

A Labor and Material Payment Bond for this project was entered into by Cardinal as principal, USF & G as surety, and Boone County Health Care Corp., Charleston National Bank and Boone County Building Commission as obligee or owner in the amount of $1,800,000, pursuant to which Cardinal and USF & G bound themselves to make payment to all claimants for labor and material used in the performance of the contract for the project. As defined in the bond, the term "claimants" includes BesMec as the subcontractor and State Electric Supply Company, Inc., and Electronic Specialty Company, who each supplied BesMec.[5]

As a condition to suit or action on the bond, the terms of the bond specified that claimants such as State Electric and Electronic Specialty must (1) notify any two among Cardinal, USF & G, and the owner of any such claim within ninety days after the last furnishing of labor or materials by such claimant and (2) commence suit or action on the bond within one year following the last work which was performed by

---

Notably, a tax lien arises at the time of assessment and continues until the liability is extinguished. 26 U.S.C.A. § 6322.

4. Title 26, United States Code, Section 6321, provides as follows:
   If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty,

together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

5. Claimant is defined in the bond as one having a direct contract with Cardinal or with a subcontractor of Cardinal for labor and material respecting the project.

Cardinal on the contract on January 7, 1983.[6]

Neither State Electric nor its surety as the successor to its claim, Fidelity, gave notice, filed suit, or recorded a mechanics lien as prescribed by the bond. Electronic Specialty substantially complied with the notice provision by serving notice of its mechanics lien on Cardinal and filing it in the Boone County clerk's office, followed by its suit to enforce the mechanics lien and to obtain an *in personam* judgment against Cardinal, as well as BesMec, resulting *inter alia* in the default judgment against Cardinal.

■ It is observed that the land on which the nursing home was constructed is the subject of a 99–year lease dated November 19, 1979, from Boone County Building Commission, as Lessor, to Americare of West Virginia, Inc., as Lessee. The lessee is the predecessor in title to its subsidiary, Boone County Health Care Corp. Although the lessee could use the premises only for nursing care purposes, the lessee retained the right to "remove ... or otherwise freely deal" with the building improvements on the demised premises. The contractor's construction contract with Boone County Health Care Corp. and its bond were recorded on June 12, 1981, in the Boone County Clerk's office. If treated as a "structure" to be used for public purposes, the public building statute directs that the laborers and materialmen must, at least as to the interest of the lessor Boone County Building Commission, look to the bond alone and cannot obtain a lien upon the building or land upon which it is situate. W.Va.Code § 38–2–39. If treated instead as a filing under the statute limiting the owner's liability for virtually all purposes to the amount paid by the owner under the contract, the laborers and materi-

almen could obtain a lien upon the real estate, but the contractor and surety would be bound to discharge it by payment under the bond. W.Va.Code § 38–2–22. The result in this interpleader action is the same under either statute. *See infra*, page 1279, *Fidelity & Deposit Co. of Maryland v. County Court*, 123 W.Va. 409, 15 S.E.2d 302 (1941).

A similar labor and material payment bond was entered into by BesMec as principal, Fidelity as surety, and Cardinal as obligee or owner in the amount of the BesMec subcontract with Cardinal for $278,500 under date of December 10, 1981. This bond was not recorded. The subcontract between Cardinal and BesMec of the same date included the following provision:

> Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

Subcontract, § 6.2.[7] The subcontract, together with the subcontractor's bond and the contractor's bond, appear to give Cardinal the right, though not the duty in the absence of either a valid mechanics lien or timely notice and suit on the bond, to make payment of the subcontractor's unpaid bills for labor and materials used on the project and deduct any such payment from the balance owing to BesMec. Cardinal chose not to make payment of the State Electric/Fidelity claim and the Electronic Specialty claim, particularly in view of the outstanding federal tax lien claim of the United States and, instead, paid the $20,000 sum otherwise owing under the BesMec subcontract into court in this interpleader action.

**6.** It was further provided that the amount of the bond was to be reduced by all payments made under the bond, including any payment by USF & G of mechanics liens filed of record against the improvement, whether or not a claim for the amount of any such mechanics lien was presented under and against the bond.

**7.** The subcontract further provides in § 11.2.6 as follows:

> The subcontractor shall pay for all materials, equipment and labor used in, or in connection with, the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

■ Under these circumstances, the applicable state law of West Virginia makes it clear that BesMec had a property interest in the remaining contract proceeds of $20,-000 to which the federal tax lien attached. *Fidelity & Deposit Co. of Maryland v. County Court*, 123 W.Va. 409, 15 S.E.2d 302 (1941). In *Fidelity*, it was held that moneys remaining in the hands of the owner and not yet paid over to the defaulting contractor whose surety completed the job constituted property subject to the lien of West Virginia's business and occupation tax against the contractor and was superior to the rights of laborers and materialmen to which the surety was subrogated. In *Fidelity*, the county court had awarded a contract for the erection of a county jail. Inasmuch as the project involved a public building, the contractor was required to furnish a bond for the faithful performance of its contract. The bond included all the requirements of W.Va.Code § 38–2–39 which prescribed, then as now, that the "bond and the sureties thereon shall be responsible to such materialmen ... or performer of such labor, or their assigns, for the full payment of the value thereof." [8] The lien of the State for gross sales tax at issue in *Fidelity* reached and was limited to "all property used in the business or occupation upon which such tax is imposed and said lien shall have priority over all other liens and obligations except those due the United States." W.Va.Code § 11–13–12.

The West Virginia court concluded that the contract under which the contractor in *Fidelity* operated, including all rights accruing to the contractor thereunder, constituted property to which the lien of the State attached.[9] The court then distinguished its earlier holding in *State v. Coda*, 103 W.Va. 676, 138 S.E. 324 (1927), as being limited to cases involving the competing rights of private creditors. *Fidelity*,

15 S.E.2d at 305. In *Coda*, those furnishing material and labor in the construction of a public highway, for which the contractor had given the required bond conditioned for their payment, were held to possess an equitable lien on the money retained by the State until completion of the contract; and, upon default of the contractor, were further held to prevail over one to whom the contractor upon completion of the contract assigned part of that fund for repayment of a loan of money used by him in performing the contract. In *Fidelity*, the court observed:

> It is true that appellee [the surety in *Fidelity*] paid in wages and for materials an amount in excess of any sum due the contractor from the county court on the completion of the work, and undoubtedly under the principle of subrogation would be entitled to be subrogated to the rights of laborers and materialmen for any amount so paid to them. This is held in *State v. Coda*, 103 W.Va. 676, 138 S.E. 324; *Capon Valley Bank v. State Road Commission*, 111 W.Va. 491, 163 S.E. 44 [1932]. This being a public building, coming within the terms of Code, 38–2–39, the laborers or materialmen could not acquire a lien upon the public structure, but they are protected under the bond required by said statute, and under the cases above cited, and general law, the surety on the bond executed thereunder would be entitled to be subrogated to their rights. The relief which the surety could thereby obtain cannot in our opinion take a higher status than the lien which a laborer or materialman could obtain were the structure under consideration not a public building.

The court in *Fidelity*, treating *Coda* as inapplicable to defeat the competing state tax lien, held the lien of the State for gross sales taxes superior to that of laborers or

---

**8.** As already noted, section 38–2–39 further provides that "[n]othing in [the mechanics lien] article shall be construed to give a lien upon such a public building or improvement as is mentioned in this section, or upon the land upon which such public building or improvement is situated."

**9.** The gross sales taxes due the State in *Fidelity* had arisen in part on income respecting the jail construction contract and in part on income from other business activities of the contractor.

materialmen.[10]

Reference to the federal tax lien arising under the Internal Revenue Code discloses that it is even broader than the West Virginia statute in *Fidelity* in that the federal tax lien reaches in the broadest sweep "all property and rights to property ... belonging to" the taxpayer. Inasmuch as the contractor possesses a property interest in the proceeds of the contract sufficient to permit the attachment of the West Virginia gross sales tax lien at issue in *Fidelity*, so too is it sufficient to be reached by the federal tax lien under § 6321. To the extent that the opinion in *Logan Planing Mill Co. v. Fidelity & Casualty Co. of New York*, 212 F.Supp. 906 (S.D.W.Va.1962), concludes to the contrary, it is unpersuasive. *Id.* at 922–23.

■ As already noted, Cardinal chose not to make payment to State Electric/Fidelity, who failed to make timely claim as required by the bond terms or to take any step to perfect that claim. Accordingly, the federal tax lien is deemed superior to the claim of Fidelity, the assignee-subrogee of State Electric.

Cardinal also chose not to pay Electronic Specialty, notwithstanding its mechanics lien and suit against Cardinal and others resulting in default judgment for $5,048.62 against Cardinal. It is conceded by the United States in its Memorandum In Support Of Motion For Summary Judgment that Electronic Specialty's mechanics lien is protected by and is superior to the federal tax lien under 26 U.S.C. § 6323(a) and (h)(2). The United States nevertheless claims priority under section 3713 as next discussed.

### III. *Section 3713*

The United States in this setting is entitled to prevail by virtue of the absolute priority rule of 31 U.S.C. § 3713, wherein it is prescribed in subsection (a)(1) that:

A claim of the United States Government shall be paid first when—(A) A person indebted to the Government is insolvent and— ... (iii) an act of bankruptcy is committed; ....

■ In order for the priority expressed in § 3713 to apply in the present case, it must be shown that an act of bankruptcy has been committed by BesMec. "Acts of bankruptcy" were enumerated in § 21(a) of the former Bankruptcy Act and include, *inter alia*, having suffered or permitted, while insolvent, either a judicial lien upon one's property without discharging that lien within thirty days or the appointment of a receiver or trustee to take charge of one's property. *See*, former 11 U.S.C.A. § 21(a). The priority contained in § 3713 does not arise at the time a debt becomes due to the United States. Rather, the priority is created when an act of bankruptcy is committed by an insolvent debtor. Here, the initial act of bankruptcy was committed as of July 6, 1984, when BesMec failed to discharge a judgment lien within thirty days. BesMec's insolvency is conceded.

■ The priority accorded under § 3713 is based on the policy of securing an adequate revenue to satisfy the burdens on the federal treasury. In light of this purpose, § 3713 is to be liberally interpreted. *United States v. Moore*, 423 U.S. 77, 96 S.Ct. 310, 46 L.Ed.2d 219 (1975) (discussing former 31 U.S.C.A. § 191, the predecessor to § 3713). Section 3713 insures that the United States is accorded an absolute priority over the claims of general lienholders, even though its own lien is general. *W. T. Jones and Co. v. Foodco Realty, Inc.*, 318 F.2d 881, 885 (4th Cir.1963).

■ In addition, § 3713 confers priority on the government over subsequently created choate liens. However, it does not confer priority upon the United States over prior choate liens. *See, e.g., United States v. DuPriest*, 305 F.Supp. 714 (W.D.La. 1969); *Creditors Exchange Service, Inc., v. United States*, 277 F.Supp. 885 (S.D.Tex. 1967); *United States v. Oswald & Hess Co.*, 225 F.Supp. 607 (W.D.Pa.1964). In order for a lien to be considered choate, the identity of the lienor, the amount of the

---

**10.** Thus, the West Virginia Supreme Court has allocated the risk of loss in such situations to the laborers and materialmen unless a surety is on hand to absorb the loss, with recourse of dubious worth against the failing contractor.

lien and the property subject to the lien must be established, and, with respect to an insolvent debtor under § 3713, the lienor must generally have obtained either possession or title to the property. *United States v. Vermont*, 377 U.S. 351, 358, 84 S.Ct. 1267, 1271, 12 L.Ed.2d 370 (1964); *W.T. Jones and Co. v. Foodco Realty, Inc.*, 318 F.2d 881, 887 (4th Cir.1963); *United States v. DuPriest*, 305 F.Supp. 714, 717 (W.D.La.1969); *Creditors Exchange Service, Inc. v. United States*, 277 F.Supp. 885 (S.D.Tex.1967); *cf. United States v. Atlantic Municipal Corp.*, 212 F.2d 709 (5th Cir.1954). *See* Plumb, *Federal Tax Liens*, at pp. 192–93.

▮ Electronic Specialty has not reduced the property encumbered by its lien to possession or obtained title to it. A mechanics lien, even where perfected and preserved according to state law, does not thereby achieve priority over the claim of the federal government. *See W.T. Jones and Co. v. Foodco Realty, Inc.*, 318 F.2d 881 (4th Cir. 1963) (mechanics lien filed prior to the creation of the priority is subordinate to the claim of the United States if the subject property is not reduced to possession of the lienor). The claim of Fidelity is likewise inchoate when measured against the federal tax lien.

### IV.

Accordingly, for the reasons given, it is ORDERED and ADJUDGED that:

1. The motion for summary judgment of the defendant, the United States of America, be, and the same hereby is, granted;

2. The motion for summary judgment of the defendant, Fidelity and Deposit Company of Maryland, be, and the same hereby is, denied;

3. The motion for summary judgment of the defendant, Electronic Specialty Company, be, and the same hereby is, denied;

4. The sum of $20,000.00, plus interest, held by the Clerk of this court be remitted to the defendant, the United States of America; and

5. The defendants BesMec, Inc., Fidelity and Deposit Company of Maryland, Electronic Specialty Company, and the United States of America, their agents, attorneys, representatives, assigns, and all other persons claiming by, through or under them, be, and the same hereby are, enjoined from instituting or prosecuting any suit or proceeding in any court based on a right to the $20,000.00 in proceeds representing the settlement between Cardinal Contruction Company and BesMec, Inc.; without prejudice, nevertheless, to all such further proceedings as Electronic Specialty Company may take to seek payment of its claim in the principal sum of $5,048.62 as evidenced by its judgment against Cardinal Construction Company in that amount in the Boone County Circuit Court, as well as its pursuit in that same suit of the enforcement of its mechanics lien and any *in personam* action therein, but Electronic Specialty Company shall realize only one recovery; and without prejudice to such timely suit, if any, as may be made on the bond of Cardinal Construction Company, as principal, United States Fidelity & Guaranty Company, as surety, and Boone County Health Care Corp., Charleston National Bank, and Boone County Building Commission, as obligee or owner, under date of May 5, 1981.

There being nothing further for disposition in this civil action, it is further ORDERED that this case be dismissed and stricken from the docket of the court.

### JUDGMENT ORDER

Pursuant to the memorandum order this day entered in the above-styled civil action, it is ORDERED and ADJUDGED that:

1. The motion for summary judgment of the defendant, the United States of America, be, and the same hereby is, granted;

2. The motion for summary judgment of the defendant, Fidelity and Deposit Company of Maryland, be, and the same hereby is, denied;

3. The motion for summary judgment of the defendant, Electronic Specialty Company, be, and the same hereby is, denied;

4. The sum of $20,000.00, plus interest, held by the Clerk of this court be remitted to the defendant, the United States of America; and

5. The defendants BesMec, Inc., Fidelity and Deposit Company of Maryland, Electronic Specialty Company, and the United States of America, their agents, attorneys, representatives, assigns, and all other persons claiming by, through or under them, be, and the same hereby are, enjoined from instituting or prosecuting any suit or proceeding in any court based on a right to the $20,000.00 in proceeds representing the settlement between Cardinal Construction Company and BesMec, Inc.; without prejudice, nevertheless, to all such further proceedings as Electronic Specialty Company may take to seek payment of its claim in the principal sum of $5,048.62 as evidenced by its judgment against Cardinal Construction Company in that amount in the Boone County Circuit Court, as well as its pursuit in that same suit of the enforcement of its mechanics lien and any *in personam* action therein, but Electronic Specialty Company shall realize only one recovery; and without prejudice to such timely suit, if any, as may be made on the bond of Cardinal Construction Company, as principal, United States Fidelity & Guaranty Company, as surety, and Boone County Health Care Corp., Charleston National Bank, and Boone County Building Commission, as obligee or owner, under date of May 5, 1981.

There being nothing further for disposition in this civil action, it is further ORDERED that this case be dismissed and stricken from the docket of the court.