## In re NULL'S SERVICE, INC., Debtor.

**Bankruptcy No. 89–23971–D(RS).**
**Adv. No. 89–0116.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Jan. 17, 1990.

---

302

Steve Douglass, Memphis, Tenn., for trustee.

Scott Frick, Memphis, Tenn., for McCain.

Clark Washington, Memphis, Tenn.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION FOR RELIEF FROM AUTOMATIC STAY TO ALLOW DISBURSEMENT OF FUNDS

BERNICE BOUIE DONALD,
Bankruptcy Judge.

This core proceeding[1] came on for hearing on December 21, 1989 on motion by McCain and Associates, Inc. ("McCain") for summary judgment and for relief from the automatic stay to allow it to disburse funds. McCain submitted a Memorandum of Law and several affidavits in support of its motions. The only testimony adduced at the hearing was that of Mr. Jim W. Null, president of debtor. The following shall represent the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### CASE AND FACTUAL SUMMARY

Null's Service, Inc., debtor, filed a petition under chapter 11 of the Bankruptcy Code on May 26, 1989. Thereafter, on October 16, 1989, debtor converted its chapter 11 case to a case under chapter 7.[2] Prior to the conversion, on June 7, 1989, debtor filed an adversary proceeding[3] seeking to recover damages from McCain, and to hold McCain in contempt for failure to turnover property of the estate. McCain filed a motion to dismiss the adversary proceeding, but thereafter, withdrew that motion on November 28, 1989. The instant matter concerns McCain's motion for summary judgment in the adversary proceeding.

McCain also requests that the automatic stay be lifted to allow it to retain certain funds pursuant to its right to setoff and recoupment.

---

1. 28 U.S.C. § 157(b)(2)(G)

2. Attorney George W. Emerson was appointed trustee, and he is represented by Attorney Steve Douglass.

3. Adversary Number 89–0116

McCain is a general contractor that performs commercial construction work. McCain contracted with debtor for the latter to perform the installation of heating, ventilation, and air conditioning work on two (2) projects, Shelby Square Shopping Center ("Shelby Square") and Summer Oaks Shopping Center ("Summer Oaks"). Debtor admits that it has not paid suppliers for certain services and materials in connection with their work on the Shelby Square project. Several of the suppliers filed liens on the project to secure payment.

Debtor avers that the Summer Oaks project is complete, and suppliers are paid in full, thus it is not at issue. Debtor does not dispute the existence of the debts, nor the amount of the debts to suppliers on the Shelby Square project except for the debt owed to McGhee's Crane Service.

The Shelby Square project involved several subcontracts including, Walmart, Walgreens, Shoe City, Simply Six, Hair Tek, and several bays. The trustee argues that under the concept of mutuality of debt, McCain at the very least, can hold only monies due debtor on those projects that debtor owes suppliers. Thus, McCain cannot hold money it owes debtor, on a project that debtor owes no suppliers, to pay suppliers from other projects.

McCain proposes various theories under which it claims a right to the monies in question. First, McCain claims it has a right to setoff under 11 U.S.C. § 553. Secondly, McCain alleges it is entitled to retain the funds under a theory of recoupment. Third, McCain avers that debtor is in breach of its contract. Fourth, McCain states that alternatively, it should prevail under the constructive trust fund theory and equitable subrogation.

McCain further avers that debtor is not honoring warranty obligations. However, Mr. Null testified that all warranty work was being fulfilled, and no evidence was adduced to rebut this testimony.

Several issues are before the court in this matter. The primary issues are: 1) whether there is any genuine issue as to any material fact such that the motion for summary judgment filed by McCain should be granted; 2) whether sufficient cause exists such that the automatic stay should be lifted to allow McCain to pay suppliers of debtor; and 3) whether set-off pursuant to 11 U.S.C. § 553 is appropriate when the general contractor withholds money it owes debtor, subcontractor, to pay suppliers of debtor who have filed materialman's liens on the project? In analyzing these issues, the court will address several sub-issues.

## DISCUSSION

A motion for summary judgment shall be granted if the moving party shows that there is no genuine issue as to any material fact, and movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Fed.R.Civ.P. 56(c) states in pertinent part:

**Rule 56. Summary Judgment**

(c) **Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Fed.R.Civ.P. 56(c); Bankruptcy Rule 7056. In the instant case, McCain seeks summary judgment in the adversary proceeding filed by debtor.

During the hearing, it became apparent to the court that numerous legal issues were presented by the facts at hand. Although the parties generally agree as to the underlying facts, the law governing the issues presented by these operative facts, is subject to multiple interpretation.[4]

---

**4.** The adversary proceeding concerns whether McCain has a right to withhold the funds due debtor. Under the Bankruptcy Code, if McCain has a right to setoff, then it can rightfully retain

Thus, McCain cannot show that it is entitled to judgment as a matter of law because the law is not clear on the issues before the court. Therefore, McCain's motion for summary judgment is denied.

McCain requests relief from the automatic stay[5] in order to exercise its asserted right to setoff. Thus, the court must first determine whether McCain has a right to setoff under 11 U.S.C. § 553(a) before it can ascertain if relief from the automatic stay is appropriate.

 The Bankruptcy Code provides that all entities that owe a debt to the debtor that constitutes property of the estate and is due and owing, must pay that debt to the trustee. 11 U.S.C. § 542(b) provides in relevant part:

> [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Norton Bankr.Code Pamphlet 1989–1990 Ed, 448. Thus, the debt must be paid to the trustee unless there is a valid right to setoff. *In re Pester Refining Co.*, 845 F.2d 1476 (8th Cir.1988). The burden of proof is on the creditor to prove its right to setoff. *Third National Bank v. Carpenter*, 14 B.R. 405, 408 (Bankr.M.D.Tenn. 1981).

The court must first determine whether the funds in question are property of the estate. If the funds are not property of the estate, the debtor would then have no valid claim to these funds. Section 541(a)(1) of the Bankruptcy Code states:

**541. Property of the estate.**

(a) The commencement of a case section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Norton Bankr.Code Pamphlet 1989–1990 Ed, 435. Under section 541, property of the estate consists of any legal or equitable interests of the debtor at the time the petition was filed.

Section 541(a)(1) is broad in scope. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Section 541(d)[6] limits debtor's rights in property to the extent of its legal interest but not to the extent of equitable interest held by others in that property. If McCain establishes the suppliers equitable right to the funds through the imposition of a constructive trust, those funds will not constitute property of the estate.

Tennessee law dictates the interest, if any, the debtor has in the funds. *c.f., In re Lafollette Sheet Metal, Inc.*, 35 B.R. 634, 636 (Bankr.E.D.Tenn.1983). McCain argues that it holds the funds in trust for suppliers, therefore, it is not property of the estate. In *Sequatchie Concrete Service v. Cutter Laboratories*, 616 S.W.2d 162 (Tenn.Ct.App.1980), a supplier was not entitled to have funds owed by the general contractor to the bankruptcy subcontractor, held in trust for the suppliers benefit and applied as a setoff. The court found that in Tennessee, there is no statutory authority that creates a constructive trust

the funds. However, if McCain has no right to setoff, it has violated the automatic stay.

5. 11 U.S.C. § 362

6. § 541. Property of the estate.
 (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as

to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
Norton Bankr.Code Pamphlet, 1989–1990 Ed., 437.

for suppliers. *Id.* at 166. The court stated:

[s]ince this court is unable to find authority establishing a construction fund trust in the absence of an explicit state builders trust fund statute, a prior agreement between the parties for direct payment to the subcontractor or possession of a valid ... mechanics lien by the subcontractor, we hold that *Sequatchie Concrete* is not entitled to have the funds owed to Tate held in trust for it.

*Id.* Thus, there was no trust inuring to the benefit of the supplier, and the funds passed to the bankruptcy trustee as property of the estate. *Id.* at 164.

McCain argues that under Tenn.Code Ann. § 66–11–138, a trust arises from the benefit of the suppliers to support its position. McCain cites *Daugherty v. State,* 216 Tenn. 666, 393 S.W.2d 739 (Tenn.1965) *cert. denied,* 384 U.S. 435, 86 S.Ct. 1601, 16 L.Ed.2d 671 (1966). In *Daughterty,* the Tennessee Supreme Court stated that the criminal statute, Tenn.Code Ann. § 64–1140,[7] was "intended to make the payments to the contractor trust funds for the payment of labor and materials ..." *In re Cedar City Elevator & Refrigeration Co.,* 14 B.R. 623, 625 (Bankr.M.D.Tenn.1981); citing *Daugherty v. State,* 393 S.W.2d at 741.

In *Cedar City Elevator & Refrigeration Co.,* Judge Russell H. Hipe, Jr. found that the decision in *Daugherty* created a trust ex maleficio that arises as a result of a wrongdoing, and not a traditional trust which would benefit suppliers. Judge Hipe stated that the Tennessee Supreme Court had an opportunity to review *Sequatchie* to explicitly hold that Tennessee allows constructive trust for suppliers, but denied permission to appeal on April 27, 1981. 14 B.R. at 627. To interpret the statute as impressing a trust, without clear directions to contractors on how they are to handle

the funds is a misinterpretation of the statute.

■ McCain cites numerous cases to support its position that the funds are not property of the estate. However, it is clear under Tennessee law that there is no expressly created trust under Tenn.Code Ann. § 66–11–138 (1982). Although the status of the law on the imposition of a trust under the statute is unclear, this court will decline the invitation to second-guess the intent of the legislature to find that a trust is imposed under the statute. Moreover, Judge Clive W. Bare of the United States Bankruptcy Court of the Eastern District of Tennessee opined that the questioned statute should no longer be given the effect of impressing a trust on funds that would be recognizable in bankruptcy proceedings. *Cedar City Elevator & Refrigeration Co.,* 14 B.R. at 628, citing *Kannon v. Blalock,* 15 B.R. 33 (Bankr.E.D. Tenn.1981); *Witt Building Material Co. v. Barker,* 14 B.R. 852 (Bankr.E.D.Tenn. 1981).

McCain also cites several federal court cases in support of its position that the funds are subject to a trust, and thus not property of the estate. Yet, McCain neglects to note that those decisions rest on underlying state laws. Those state laws are not only at variance with Tennessee law, but some of those laws actually grant construction fund trusts.

Since Tennessee does not statutorily provide for a constructive trust[8] for the benefit of suppliers, the court finds no basis for granting the suppliers a legal or equitable interest in the funds on that basis.

Although neither Arkansas nor Mississippi lien statutes provide constructive trusts in favor of suppliers, the Fifth Circuit Court of Appeals held that the debtor, a general contracting firm, had a legal interest in the funds held by the property owner, but due to be paid to debtor. *Georgia Pacific Corp. v. Sigma Service Corp.,*

---

7. The current statute is Tenn.Code Ann. § 66–11–138 (1982).

8. *See, generally, In re Cedar City Elevator & Refrigeration Co.,* 14 B.R. 623, 628 (Bankr.M.D. Tenn.1981). *See, also, H & A Constr. Co.,* 65

B.R. 213, 217 (Bankr.D.Mass.1986), where the court held that the contract provisions that the contractor pay the subcontractor promptly did not create an express trust.

712 F.2d 962, 967–68 (5th Cir.1983). Georgia Pacific, debtor, a general contracting firm, contracted to perform work on two separate construction projects. Dura-wood and Foster provided materials needed for one of the projects. Georgia Pacific Corp., the project owner, refused to pay debtor for work debtor performed on the construction contract because materialmen filed stop-notices on the project. The court held that even if part of the funds were subject to a constructive trust in favor of suppliers, the debtor nonetheless had a legal interest in the property so impressed that it was property of the estate. *Id.* at 968.

Some courts have held that suppliers have an interest in funds held by a project owner due to the contractor's breach of contract in failing to pay suppliers. In *In re Pacific Marine Dredging & Constr.*, 79 B.R. 924, 929 (Bankr.D.Or.1987), the court found that the contractor's failure to pay subcontractors was a breach of contract thereby warranting the owners exercise of his contractual rights to withhold final payment. Debtor, general contractor, did not have any legal or equitable interest in the money held by the owner due to its breach of contract. *Id.* at 929. Thus, the funds were not property of the estate.

■ There is no trust created for the benefit of suppliers thereby giving them an interest in the funds. The suppliers then, are creditors of the debtor with prepetition claims. Furthermore, this court is not persuaded that due to debtor's breach of the contract, it has no interest in the funds. Certainly debtor has an interest in money it earned due to its performance on the contract. However, this sum could perhaps be mitigated by a breach of contract action.

Therefore, the funds are property of the debtor's bankruptcy estate, and the only issue left undecided, is whether setoff or recoupment is applicable and if so, what amount of the funds should be turned over to the trustee?

■ The right of a creditor to setoff a debt is governed by 11 U.S.C. § 553(a) which states in pertinent part:

§ 553. Setoff.

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

Norton Bankr.Code Pamphlet 1989–1990 Ed, 502–03. There are several exceptions under section 553 not material herein. The burden of proof is on the creditor, McCain, to prove entitlement to setoff. *Third National Bank,* 14 B.R. at 408. Basically, there are three elements necessary to establish a creditor's right to setoff: 1) there must be a debt owing by the creditor to the debtor that arose before the filing of the bankruptcy petition; 2) a claim of the creditor against debtor that arose before the filing of the bankruptcy petition; and 3) the debt and the claim must be mutual obligations. *In re Morristown Lincoln-Mercury, Inc.,* 42 B.R. 413, 416 (Bankr.E.D.Tenn.1984).

■ First, a debt is a liability on a claim. 11 U.S.C. § 101(4)(A) (1989). In the present case, it is undisputed that McCain withheld money due debtor as a result of the debtor's performance under certain contracts. Thus, debtor has a right to payment from McCain pursuant to the contract. Therefore, McCain owes a debt to debtor which arose prior to the commencement of the bankruptcy case.

Secondly, the court must ascertain whether McCain has a claim [9] against debtor. In *In re Fulghum Constr. Corp.,* 23 B.R. 147 (Bankr.M.D.Tenn.1982), debtor contracted with Columbia Gulf Transmission Company ("Columbia") to perform pipeline construction. Debtor, as general

---

**9.** 11 U.S.C. § 101(4)(B) defines claim as:

(4) "claim" means—

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to

an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Norton Bankr.Code Pamphlet 1989–1990 Ed., 2.

contractor, was to hire subcontractors at its own expense. Columbia retained funds due debtor pending performance of the contract. Columbia then paid various suppliers and subcontractors of the debtor.[10] Judge Keith M. Lundin held that Columbia had a prepetition claim against debtor for debtor's failure to pay subcontractors and suppliers, for removal of liens against Columbia's property and for breach of contract. *Id.* at 152.

In the instant case, the contract between the parties states:

**The Contractor agrees as follows:**

D. That if notification of any claims have been made against the subcontractor or the contractor arising our of labor or materials furnished the project [sic] covered by this agreement ... the contractor may [withhold] such amounts otherwise due or to become due hereunder . . .

Based on the language of the contract, debtor was to prevent any claims by suppliers and materialmen against the project by paying them in due course.[11] Therefore, McCain has a pre-petition claim against debtor for debtor's failure to pay materialmen and suppliers. This claim is in the form of a breach of contract which is a claim as defined by 11 U.S.C. § 101(4)(B). It is irrelevant that McCain did not pay the suppliers as Columbia did in *Fulghum Constr. Corp.* Payment by Columbia to the suppliers and subcontractors, merely gave it an additional claim against debtor for removal of the liens. Thus, the factual distinction between *Fulghum Constr. Corp.*, and the present case does not negate the applicability of the case.

Third, since the court has determined that McCain owes debtor a prepetition debt, and McCain has a prepetition claim against debtor, the court must find that the debt and claim are mutual obligations in order to allow setoff. "Mutuality of obligations means that the obligations must be between the same parties and owing to and due in the same rights and capacities." *Fulghum Constr. Corp.*, 23 B.R. at 152. (other citations omitted). The debt is owed by McCain to debtor. The claim by McCain is against debtor. The debt and claim are prepetition because the claim arose and the debt was due before the commencement of the case. Each party owes the other in their capacities as contractor and subcontractor. Therefore, the obligations are mutual. Having so found, the court concludes that McCain has established its right to setoff under section 553.[12]

The trustee argued that to allow setoff is tantamount to preferring one creditor over another. The trustee supports his position with *In re Carloss Well Supply Co.*, Case No. 86–26665–K, Adv. No. 87–0079 (Bankr. W.D.Tenn. December 31, 1987). Initially, the court will note that *Carloss Well Supply Co.* is distinguishable from the present case in that the issue therein involved the recovery of a debt and the right to avoid and recover a postpetition transfer. Moreover, although setoff was not appropriate in that case, it does not negate the right to setoff afforded creditors under the Bankruptcy Code.

■ The right to setoff rests on principles of equity and is within the discretion of the court. 4 Collier on Bankruptcy ¶ 553.02 (15th ed. 1989). To quote Justice William J. Harbison of the Tennessee Supreme Court, the court seeks to "achieve equity and result consonant with good conscious ..." *Hayes Pipe Supply v. McKendree Manor*, 695 S.W.2d 174 (Tenn.1985).

---

10. The court notes that Columbia should have withheld payment, and sought relief to pay the claimants from the bankruptcy court. 23 B.R. at 150 n. 9.

11. No. II of the Sub–Contract Agreement, Exhibit A to the Memorandum Brief filed December 19, 1989 by McCain which states that debtor is to pay for materials and labor in connection with performance of the contract.

12. The court then, need not reach the issue of whether McCain has a right to recoupment. The court notes that recoupment is distinguished from setoff in that under the doctrine of recoupment, the sum can be reduced only by matters or claims arising out of the same transaction as the original sum. *Waldschmidt v. CBS, Inc.*, 14 B.R. 309, 314 (Bankr.M.D.Tenn. 1981). Recoupment is setting up a demand arising from the same transaction as the plaintiff's claim or cause of action for the purpose of reducing the claim. 4 Collier on Bankruptcy ¶ 553.03 (15th ed.1989).

Therefore, the court deems setoff appropriate in this instance.[13] McCain may pay all outstanding invoices from suppliers and materialmen who evidence their right to payment by establishing the existence of a perfected liens. All other such claims shall be deemed unsecured debts of the estate, not subject to setoff. McCain then may setoff the amounts paid to those suppliers and materialmen. Further, McCain shall refrain from paying McGhee's Crane Service from the funds it withheld from debtor, until such time that the disputed nature of the debt is resolved by debtor and McGhee. McCain is not entitled to setoff any amounts for attorneys fees or any other amount connected with their rights in a breach of contract action. McCain then must turnover all remaining funds to the trustee for distribution to creditors.

Therefore, based on the foregoing, the case record as a whole, and the testimony and arguments at the hearing, the court conditionally lifts the automatic stay to allow McCain to setoff the claims designated above.

IT IS SO ORDERED.

---

**13.** This court does not propose that setoff is appropriate in all situations. The exercise of such rights must be granted sparingly, based on the particular facts and circumstances of the case, to avoid potential abuse.